Carter *v.* Porter.

———◆———

EZRÀ CARTER, JR., *in Eq.*, *versus* STEPHEN PORTER.

When real estate, held *in trust* by a debtor having no beneficial interest therein, has been conveyed by him to a third person, and by the latter to the *cestui que trust*, it cannot then be levied upon as the property of the trustee, notwithstanding he may have made the conveyance to such third person with intent to defraud his creditors; and it is immaterial whether the deed from such third person to the *cestui que trust* has or has not been recorded.

BILL IN EQUITY, heard on bill, answer and proof.

The bill substantially alleged that, in April, 1863, the complainant recovered judgment against one Seward W. Porter for $8452,23 and costs, for a debt which accrued prior to Jan. 12, 1855; that, on Jan. 12, 1855, the judgment debtor was seized in fee and severalty of certain parcels of land, described in a deed from said Seward to the respondent, dated Jan. 12, 1855, and by said deed he conveyed said land to the respondent, for the nominal consideration of $10,000; that said conveyance was made by said Seward for the purpose and with the intention, on his part, of defrauding and delaying the complainant and other creditors, and to secure said property from attachment and execution,

and that the respondent, in receiving the conveyance and continuing to hold the same, combined and confederated with said Seward in his said purpose and intention; and that said conveyance was without any valuable consideration.

The bill further alleged that, on Jan. 12, 1865, the complainant duly extended his execution upon a certain portion of the premises, and the levy was duly recorded; and that the respondent has never surrendered possession of the land levied on, but unjustly withholds the same.

That, at the time of said conveyance, said Seward was insolvent, and his insolvency known to the respondent; that, about the same time, said Seward, with the knowledge of the respondent, conveyed away all his attachable property; that the conveyance to the respondent was made to, and accepted by him, with the understanding that he should hold the same by secret trust for the use, and subject to the direction of said Seward; that, pursuant to such understanding, the respondent did, on Nov. 27, 1861, by deed duly acknowledged, &c., in accordance with the direction of said Seward, and without any valuable consideration, convey a portion of said real estate, other than that levied upon, to the wife of said Seward.

The prayer of the bill is, that the respondent be compelled to convey to the complainant in fee, the legal title of the real estate levied upon; and for general relief.

In his answer the respondent denied all knowledge of the complainant's claim against said Seward, the judgment and levy, and prays that the complainant be required to set forth the origin and nature of the claim and establish its validity as well as that of the judgment and levy.

The answer further alleges that the premises upon which the alleged levy was made, was formerly the homestead of Nehemiah Porter, respondent's father, which, through divers conveyances, had come to Seward W. Porter, respondent's brother; that the respondent, a farmer, having been reared upon the premises, was strongly attached thereto; that,

while the same was held by said Seward, the respondent repeatedly tried to purchase it, and finally succeeded Jan. 12, 1855, giving his notes therefor.

That, at the time of such purchase, said Seward was a merchant in Portland, engaged in an extensive wholesale West India business, and the respondent believed him worth $50,000 above his liabilities, and had never heard any rumor to the contrary; that he did not purchase the premises with the intent charged, nor did he suspect that Seward had any such intention; that he purchased the same in good faith, having no suspicion of said Seward's pecuniary embarrassments; that he had no knowledge of other conveyances, as alleged in the bill; that the conveyance was not made or accepted by him to hold by secret trust, for the use and subject to the directions of said Seward, but that the respondent purchased said estate unconditionally, and for his own exclusive use and benefit.

That, at the time of the conveyance to the respondent, by said Seward, the said premises were in the occupation and improvement of their brother, Rufus Porter, who was formerly the owner thereof, and who had conveyed to said Seward in Dec., 1853, remaining, however, all the time in possession thereof; that, previous to his purchase, the respondent was never informed of the nature and purpose of the conveyance by said Rufus to said Seward; that, at the time of his purchase, the respondent supposed and believed that said Seward was the real sole and actual owner of said estate, free and unencumbered by any trust, either secret or express, and, so believing, he purchased it in good faith; that, soon afterwards, he informed Rufus of his purchase and payment therefor, and desired him to surrender possession of the premises; that Rufus then, for the first time, informed him that said estate was conveyed to said Seward in trust, to hold as security for his certain claims and demands, and his liabilities on account of said Rufus, and that the same was to be reconveyed by said Seward on discharge of such indebtment and release from such

liabilities; that said Rufus was exceedingly angry with said Seward, charging him with a violation of his agreement in relation to the estate, and absolutely refusing to yield possession thereof to the respondent, or to recognize him as the owner thereof, alleging a readiness to pay all Seward's claims against him, and demanding of the respondent a conveyance of the premises; that, being unwilling to become involved in a family quarrel with his brother, the respondent did not take legal measures to obtain possession of the premises, but trusted that some satisfactory arrangement could be made by which the rights of said Rufus could be protected.

That, after the conveyance by said Seward, he removed out of the State, so that the respondent was unable to have any personal interview with him touching the premises, and he has never seen him since; that said Rufus persisted in retaining possession, claiming to have the better equitable right, and offering to pay the respondent the amount he agreed to pay to Seward, and procure the respondent's said notes; that, believing Rufus' statements to be true, and that the estate was held by said Seward in trust and as security only, the respondent was unwilling to oust said Rufus, or deprive him of his beneficial interest; that, although at the time of his purchase, the respondent was desirous of occupying said estate, yet within a short time afterwards, by the illness and decease of his wife and the marriage of his only daughter to a resident in Camden, with whom he was desirous of living, he was ready and willing to release to said Rufus all his interest in the estate, on being paid the amount paid by him and for his time and expenses about said estate, and so informed said Rufus.

That he is informed and believes, that said Seward and Rufus adjusted all matters between them, and thereby said Rufus obtained the respondent's notes, and, at the request of both, the respondent conveyed a small portion of said estate to said Seward's wife, and, on Nov. 24, 1857, the remainder thereof to the said Rufus, receiving therefor his

said notes, and the agreement of said Rufus to pay him for time and expenses aforesaid, which agreement not being fulfilled, the respondent sued therefor and the suit was settled in June, 1863, by said Rufus' note for $1044, and secured by mortgage on said premises.

That, prior to said mortgage, said Rufus mortgaged the premises to J. O'Donnell, and thereafter, to wit, on June 22, 1863, conveyed said premises, subject to said mortgages, to one Nehemiah Porter, who has ever since been in possession.

The proof tended to establish the material allegations in the answer.

*W. L. Putnam*, for the complainant.

The claim that Seward held the property as collateral security cannot affect the case. The legal title being in Seward was subject to the claims of his creditors. The assignment by which he held it in trust, if any existed, was but verbal, and not binding upon Seward or his creditors, and the conveyance to Stephen shows he did not recognize it. Had Stephen conveyed directly to Rufus, in consequence of any trust, it might have been valid; or, if Stephen's deed to Rufus had been recorded prior to our levy, it might have purged the fraud; but such were not the facts.

*Davis & Drummond*, for the respondent.

WALTON, J. — This is a bill in equity, the prayer of which is that the defendant may be compelled to convey to the plaintiff certain real estate.

The real estate in question was formerly owned by Rufus Porter. In 1848, he conveyed it to his brother Seward W. Porter, to secure him against liabilities incurred as an indorser for Rufus, who was then engaged in building the Buckfield Branch Railroad. The conveyance was in form absolute, but the evidence satisfies us that it was intended as security only. In 1855, Seward, being in failing circumstances, conveyed this real estate to his brother Stephen

Porter, the defendant.   The plaintiff claims that this conveyance was fraudulent, being made to hinder and delay
creditors.   Whether this was so or not, we will not now
stop to discuss.   But we will here remark that the evidence
satisfies us that the liabilities, to secure which the land was
conveyed to Seward, were all discharged by Rufus, and that
the land was then held by Seward in trust for him, and that
he was entitled to a reconveyance of it whenever he demanded it.   The conveyance to Stephen was therefore very
clearly a fraud upon Rufus, if it was thereby intended to
keep it from him.   And, as soon as Rufus learned of the
conveyance, he complained of his brother and denied his
right to make it.   The result was that the notes which Stephen had given for it, (amounting to $10,000,) were given
up by Seward to Rufus, and by him to Stephen, and Stephen
conveyed the land to Rufus.   Rufus thus got his land back
again, except that he was compelled to convey a thousand
dollars worth of it to Seward's wife, and secure Stephen by
a mortgage of it, for a thousand dollars more.   Rufus neglected to put his deed from Stephen on record, and, seven
years afterwards, and ten years after the alleged fraudulent
conveyance to Stephen, the plaintiff levied an execution
upon it as the property of Seward, and now asks the Court
to confirm his title.   It should be stated that, two years
nearly before this levy was made, the premises had been
mortgaged to James O'Donnell, to secure between four and
five hundred dollars, and to Stephen Porter, to secure about
one thousand dollars, and then conveyed to Nehemiah Porter, and that these conveyances were all on record; and that
neither Rufus, Nehemiah, or Mr. O'Donnell are made parties to the bill.   Under these circumstances can the bill be
maintained?   We are clearly of opinion it cannot.

To say nothing of the want of parties, and nothing of
the validity of the plaintiff's judgment, we think the plaintiff's case is fatally defective for want of equity.

It is by no means clear that a creditor can in any case levy
his execution upon real estate held by the debtor in trust.

If he has notice of the trust, unqestionably he cannot. But suppose he has no notice of the trust, will the law allow him to take the property of one man to pay another's debt? This question was very ably discussed by Chief Justice SHEPLEY, in delivering the opinion of the Court in *Warren* v. *Ireland*, 29 Maine, 62, and the conclusion reached, that a trust estate could not be levied upon.—" The rule is well established," said he, "that the judgment creditors of a trustee are not allowed to hold a trust estate against the *cestui que trust*." After quoting the words of the statute, that the creditor may "levy his execution upon the debtor's real estate," he continues:—" If the words ' debtor's real estate,' are to receive such a construction as to include an estate in which he had no beneficial interest, and the title to which he held in trust for another, the effect may be to enable a creditor to obtain payment, not from the estate of his debtor, but from the property of another person. It might compel the debtor, against his will, to violate a most sacred trust, for the purpose of paying his own debt out of another's property. Could it have been the intention of the Legislature, by the use of such language, to authorize the property of one person to be taken to pay a debt due from another, and to compel him to violate a trust, to accomplish such a purpose? The statute also provides, that the levy ' shall make as good a title' to the creditor ' as the debtor had therein.' If the debtor's title was subject to the beneficial interest of another person in the estate, will any more perfect title be conveyed by the levy and statute provisions to the creditor? If so, the rights of the *cestui que trust* may be destroyed without any act of his own or of his trustee. To determine that they can be, is to decide that the Legislature, without a violation of the fundamental law, may appropriate the equitable property and rights of one person to pay the debts of another. And, if the rights of the beneficiary are not destroyed, but still adhere to and follow the title, so that they can be enforced against the statute purchaser, the effect will be, that he will be made by the satisfaction of his judg-

ment to pay for the estate without obtaining any value, for he will become the holder of a title from which he can derive no benefit. The language of the statute may have its full effect and these mischiefs be avoided, if it be construed to include those estates only in which the legal and beneficial interests are united in the debtor. It may be, if such be the construction of the statute, that a creditor may have no means of information, whether an estate, apparently owned by his debtor, be a trust estate; and he may fail to obtain any value by a levy, when he has been vigilant to obtain his rights. This may also happen in other cases, when his debtor has a title to an estate apparently good, which proves to be wholly defective. In such cases, the debt remaining unpaid, he may by a proper course have his judgment revived."

And Judge STORY, in his work on Equity, (2 Story's Eq. Jur., § 977,) denies that a trust estate can be bound by any judgments, or other claims of creditors against the trustee. And in a note to this section Judge REDFIELD says, that it has been recently decided in Vermont, after a very full examination of the authorities, that creditors levying upon lands held by the debtor in trust, *although they have no notice of the trust*, acquire no title against the *cestui que trust*.

If this view of the law be correct, it is difficult to perceive how an alienation by the trustee of a trust estate, can be a fraud upon his creditors, since, if the title had remained in him, the property could not be appropriated to pay their debts.

But, whether this view of the law be correct or not, we cannot doubt that when, as in this case, the legal title has passed out of the trustee, and is actually restored to the *cestui que trust*, it is too late for a creditor to attempt to follow it upon the ground that, when the trustee conveyed, he intended a fraud upon his creditors as well as upon his *cestui que trust*. The fraudulent intentions of the trustee cannot and ought not to work a forfeiture of the rights of the *cestui*

*que trust.* His claims are as strong as those of a creditor,· and as much under the protection of the law.

But it is contended that, inasmuch as the deed from Stephen to Rufus, although executed many years before, was not recorded till after the plaintiff's levy, it cannot affect his rights acquired under the levy. Suppose this be so; suppose, for the. purposes of this investigation, the title is to . be regarded as still in Stephen; what is the result?

Stephen discloses that, after the conveyance to him, he was informed and believed that in equity the estate belonged to Rufus; that he was willing to execute the trust which Seward by conveying to him had violated, and restore the estate to Rufus, if he could be indemnified for. what he had paid out, and for his time and trouble. The evidence shows that he has been fully indemnified, and if it were true that he now held the legal title, he would hold it without consideration and in trust for Rufus. Would this Court compel him to violate his trust and convey to the plaintiff? Upon what principle could such a decree be claimed? Are not the claims of the *cestui que trust* equal at least to those of a creditor of his former trustee? It may be true that, because there was no record evidence of the trust, a creditor might have seized and appropriated this property to the payment of his debt while the legal title was in the debtor; but we know of no rule of law that will allow him to follow it into the hands of one not his debtor. If it had been the property of the debtor in fact, as well as in appearance, undoubtedly he could. But being the property of the debtor in appearance only, and not in fact, he cannot. If a debtor fraudulently conveys *his* property, the creditor may follow it. If he fraudulently conveys the property of *another*, — property which he holds in trust merely, — the creditor cannot follow it. In such case, the fraudulent purpose of the debtor is of no importance. It cannot make that his which in equity belongs to another.

Treating, therefore, the unrecorded deed as if it had never been executed, and assuming, for the purposes of this

Foxton *v.* Kucking.

investigation, that the title at the time of the levy was still held by the defendant, it appearing to our satisfaction that the property never in fact belonged to the debtor, and that the defendant held it in trust for another, it is still the judgment of the Court that it could not legally be levied upon as the property of Seward W. Porter. It was never equitably his; it had ceased to be colorably his. Being in the hands of one willing to execute his trust, willing to hold it for the benefit of the equitable owner, the Court would not compel him to violate his trust and convey it to another.

*Bill dismissed, with costs for the defendant.*

APPLETON, C. J., BARROWS, DANFORTH and TAPLEY, JJ., concurred.